UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ZIJAD BOSNIC,

    Plaintiff,

v.                                              CASE NO. 3:17-cv-826-J-32JBT

CHRISTOPHER WRAY, etc., et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court on Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction and for Failure to State a Claim ("Motion") (Doc. 23), Plaintiff's Response thereto (Doc. 26), and Defendants' Reply (Doc. 27). The Motion was referred to the undersigned for a report and recommendation regarding an appropriate resolution. (Doc. 28.) For the reasons stated herein, the undersigned respectfully **RECOMMENDS** that the Motion be **GRANTED in part** and **DENIED in part**, that the Complaint (Doc. 1) be **DISMISSED without prejudice**, and that Plaintiff be given twenty days from the Court's order on this

---

[1] "Within 14 days after being served with a copy of [this Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.

Report and Recommendation to file an amended complaint in accordance herewith.

## I. Summary of Recommendation

Plaintiff brings claims based on his placement on the federal government's No Fly List and Terrorist Screening Database. However, since the filing of the Complaint, Plaintiff has been removed from the No Fly List. (Doc. 23-1.) As such, the undersigned recommends that Plaintiff's claims based on the No Fly List are moot. In addition, the undersigned recommends that Plaintiff's claims based on the Terrorist Screening Database need to be re-pled in light of his removal from the No Fly List so that the Complaint reflects his present circumstances. Otherwise, the Court cannot determine what other portions of the Complaint may be moot. Accordingly, the undersigned recommends that Plaintiff's Complaint be dismissed without prejudice.[2]

## II. Background

Plaintiff alleges that he is a naturalized United States citizen who resides in Jacksonville, Florida. (Doc. 1 at 22.) Plaintiff brings this action against various

---

[2] The undersigned also notes that the Complaint is an impermissible shotgun pleading as both counts incorporate all 146 of the preliminary allegations, and count two incorporates all of the allegations of count one. *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321 (11th Cir. 2015) (noting that the most common type of shotgun complaint "is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint"). The Eleventh Circuit has condemned such pleading and suggests that, "when faced with such pleading, the district court, acting on its own initiative, [should] require a repleader." *Lumley v. City of Dade City, Florida*, 327 F.3d 1186, 1192 n.13 (11th Cir. 2003).

federal government officials challenging his placement on the government's No Fly List and Terrorist Screening Database ("TSDB").[3] In Count One, Plaintiff alleges substantive due process violations. Specifically, Plaintiff alleges that his placement on the No Fly List and TSDB violates his Fifth Amendment rights by depriving him of "his liberty interests in travel, freedom from false stigmatization, and nonattainder." (*Id.* at 27.) In Count Two, Plaintiff alleges violations of sections 702 and 706 of the Administrative Procedures Act, 5 U.S.C. §§ 701 *et seq.* ("APA"). Specifically, Plaintiff alleges that his placement on the No Fly List and TSDB was arbitrary, capricious, an abuse of discretion, and not otherwise in accordance with the law. (*Id.* at 31.)

As relief, Plaintiff seeks a declaratory judgment stating that Defendants' policies, practices, and customs violate the Fifth Amendment and the APA. (*Id.*) Plaintiff also seeks an injunction requiring Defendants to: (1) remove "Plaintiff from any watch list or database that burdens or prevents him from flying or entering the United States across the border"; and (2) provide individuals on the TSDB with a legal mechanism that affords them notice and an opportunity to contest their inclusion therein. (*Id.*)

As described by Defendants, the TSDB contains identifying information of known and suspected terrorists and was created to facilitate greater sharing of terrorist information among federal departments and agencies. (*See* Doc. 23-2 at

---

[3] Plaintiff refers to the TSDB as the "watch list." (*See* Doc. 1 at 7.)

2–3.) The TSDB is managed by the Terrorist Screening Center ("TSC"), which is administered by the FBI. (*Id.* at 3.) Two subsets of the TSDB are known as the No Fly List and the Selectee List. (Doc. 1 at 7; Doc. 23-2 at 3.) Individuals on the No Fly List are prohibited from boarding flights into, out of, over, or within United States airspace, while individuals on the Selectee List are subjected to additional security screening methods before doing so. (*Id.*) *See also* 49 C.F.R. § 1560.105(b)(1) & (2), (b)(7)(iii). The TSC decides whether to accept or reject the nomination of a person by the FBI or the National Counterterrorism Center to the TSDB or the No Fly List. (Doc. 1 at 12–13; Doc. 23-2 at 4.) The TSC also decides whether to remove a name from the TSDB or the No Fly List after it receives a redress request that has been submitted through the Department of Homeland Security Traveler Redress Inquiry Program ("DHS TRIP"), the process by which a person denied, or delayed in, boarding may request a review of his or her status. (Doc. 1 at 12–13; Doc. 23-2 at 7–8.) *See also* 49 C.F.R. §§ 1560.201–07.

Plaintiff alleges that on March 1, 2017, an airline representative informed Plaintiff that he was not allowed to board a flight to the United States from Bosnia, where he was visiting his wife and children. (Doc. 1 at 22–23.) Plaintiff was instructed to contact the United States Embassy, which in turn instructed Plaintiff to file a DHS TRIP complaint. (*Id.*) On May 24, 2017, DHS TRIP emailed Plaintiff "informing him they had made a final determination of his case. In the same email, a letter dated May 18, 2017 was attached, which confirmed that [Plaintiff] was on Defendants' No Fly List." (*Id.* at 25.) Plaintiff alleges that his "nomination to and

4

designation on the federal terror watch list was made based solely upon a hunch (based upon his race, ethnicity, national origin, religious affiliation, guilt-by-association, or First Amendment protected activities)." (*Id.* at 26.)

Also on May 24, 2017, the TSA issued a letter stating that Plaintiff may pose a security threat, thereby warranting the immediate suspension of his Transportation Worker Identification Credential ("TWIC") pursuant to 49 C.F.R. § 1572.107 "until this matter is resolved." (*Id.* at 25.) Plaintiff alleges that his TWIC was suspended due to his placement on the TSDB, the No Fly List, or both. (*Id.*) Plaintiff is a commercial truck driver and "much of his livelihood derives from driving to and from ports and other areas," which requires a TWIC. (*Id.* at 22, 25.) As such, Plaintiff alleges that his "ability to earn a living is hindered due to his placement on the No Fly List." (*Id.* at 25.)

At some point, Plaintiff received a one-time waiver to fly back to the United States. (*Id.* at 26.) On July 20, 2017, Plaintiff filed the Complaint. Although the Complaint alleges that "[u]pon information and belief, [Plaintiff] remains on the No Fly List" (*id.*), DHS TRIP notified Plaintiff that he was no longer on the No Fly List on January 19, 2018. (Doc. 23-1 at 2.) Given this development, Defendants moved to dismiss the Complaint as moot on February 15, 2018. (*See* Doc. 23.) Defendants alternatively seek to dismiss the Complaint for failure to state a claim. (*Id.*)

### III. Standard

#### A. Rule 12(b)(1)

Defendants contend that the Complaint should be dismissed for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1), because it is moot. (*Id.* at 18–20.) The Eleventh Circuit has stated that:

> Attacks on subject matter jurisdiction under Rule 12(b)(1) come in two forms, "facial" and "factual" attacks. Facial attacks challenge subject matter jurisdiction based on the allegations in the complaint, and the district court takes the allegations as true in deciding whether to grant the motion. Factual attacks challenge subject matter jurisdiction in fact, irrespective of the pleadings. In resolving a factual attack, the district court may consider extrinsic evidence such as testimony and affidavits.

*Morrison v. Amway Corp.,* 323 F.3d 920, 924 n.5 (11th Cir. 2003) (internal quotation marks and citations omitted). Defendants' Motion is "a factual attack because it relie[s] on extrinsic evidence and d[oes] not assert lack of subject matter jurisdiction solely on the basis of the pleadings." *Id.*

#### B. Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), the Court must determine whether the Complaint sets forth sufficient factual allegations to state a claim upon which relief can be granted. In evaluating whether Plaintiff has stated a claim, the Court must determine whether the Complaint satisfies Federal Rule of Civil Procedure 8(a)(2), which requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy this standard, a complaint must contain sufficient factual

6

allegations to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In ruling on a motion to dismiss under Rule 12(b)(6), a court must construe the complaint in the light most favorable to the plaintiff and accept all well-pled factual allegations as true. *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009). Although the Court must accept well-pled facts as true, it is not required to accept Plaintiff's legal conclusions. *Iqbal*, 556 U.S. at 678 (noting "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). "Similarly, unwarranted deductions of fact in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations." *Sinaltrainal*, 578 F.3d at 1260 (stating that in evaluating the sufficiency of a plaintiff's pleadings, a court is "not required to draw plaintiff's inference") (internal citation and quotations omitted).

**IV. Analysis**

**A. Claims Based on the No Fly List**

Defendants argue that the entire Complaint is due to be dismissed as moot because Plaintiff is no longer on the No Fly List. (*See* Doc. 23 at 10–12.) In doing so, Defendants rely on extrinsic evidence in the form of a letter to Plaintiff from DHS TRIP informing Plaintiff that he is no longer on the No Fly List. (Doc. 23-1.)

Article III of the United States Constitution limits the jurisdiction of federal courts to "cases" or "controversies." U.S. Const., art. III, § 2, cl. 1. "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (internal citation and quotation marks omitted). "Mootness demands that there be something about the case that remains alive, present, real, and immediate so that a federal court can provide redress in some palpable way." *Gagliardi v. TJCV Land Tr.*, 889 F.3d 728, 733 (11th Cir. 2018) (citation omitted).

Under the voluntary cessation doctrine, "a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued. Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." *Already, LLC*, 568 U.S. at 91 (citation omitted). Because of this concern, the party asserting mootness usually "bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Id.*

Plaintiff argues in part that his claims are not moot because "Defendants have failed to carry their heavy burden that the challenged conduct cannot reasonably be expected to start up again." (Doc. 26 at 6.) However, "when the defendant is not a private citizen but a government actor, there is a rebuttable presumption that the objectionable behavior will *not* recur." *Troiano v. Supervisor*

*of Elections in Palm Beach Cty., Fla.*, 382 F.3d 1276, 1283 (11th Cir. 2004) (citations omitted). An assertion of mootness by a government actor should be rejected "*only* when there is a substantial likelihood that the offending policy will be reinstated if the suit is terminated." *Id.* Indeed, "the Supreme Court has held almost uniformly that voluntary cessation [by a government defendant] moots the claim." *Beta Upsilon Chi Upsilon Chapter v. Machen*, 586 F.3d 908, 917 (11th Cir. 2009) (collecting cases).

The Eleventh Circuit considers three factors when determining whether a government actor's voluntary cessation moots a claim.

> First, we consider whether the termination of the offending conduct was unambiguous. [T]he timing and content of the decision are . . . relevant in assessing whether the defendant's termination of the challenged conduct is sufficiently unambiguous to warrant application of the . . . presumption in favor of governmental entities. Second, we look to whether the change in government policy or conduct appears to be the result of substantial deliberation, or is simply an attempt to manipulate jurisdiction. Third, we ask whether the government has consistently applied a new policy or adhered to a new course of conduct.

*Rich v. Sec'y, Fla. Dept. of Corr.*, 716 F.3d 525, 531–32 (11th Cir. 2013) (internal quotation marks and citations omitted).

Here, Defendants have unambiguously terminated the complained of conduct with respect to the No Fly List. DHS TRIP affirmatively informed Plaintiff that he had been removed from the No Fly List on January 19, 2018 through an official letter, which was filed in the public record as an exhibit to the Motion. (*See*

Doc. 23-1.) In addition, the decision to remove Plaintiff from the No Fly List appears to be the result of substantial deliberation, and not merely an attempt to manipulate jurisdiction. There is no evidence to suggest that Plaintiff's removal from the No Fly List was not a result of a genuine assessment of Plaintiff's DHS TRIP complaint.

Indeed, "the notion that [the] government would remove an individual from the [No Fly] List whom it believes is a threat to civil aviation or national security, for the mere purpose of concluding this litigation is, to say the least, far-fetched." *Fikre v. FBI*, Case No. 3:13-CV-00899-BR, 2016 WL 5539591, at *9 (D. Or. Sept. 28, 2016) (internal quotation marks and citation omitted). *See also Scherfen v. U.S. DHS*, Case No. 3:CV-08-1554, 2010 WL 456784, at *9 (M.D. Pa. Feb. 2, 2010) ("The *ad hoc* resolution of a party's grievance through a review process does indeed demonstrate that there is no reasonable expectation that the alleged wrongful conduct will recur.").[4] Accordingly, the undersigned recommends that it is not reasonably likely that Plaintiff will be added back to the No Fly List, based on existing circumstances, after this suit is terminated.

---

[4] The third factor, "whether the government has consistently applied a new policy or adhered to a new course of conduct," does not seem to apply to this case, as it presumes the government action in question has general applicability. *Rich*, 716 F.3d at 532. In this case, the government action is inherently individualized. In any event, there is no indication that Defendants have established a pattern of removing individuals from the No Fly List in response to the filing of a complaint, and then returning those individuals to the No Fly List after the termination of the suit.

To address his injury as a result of being on the No Fly List, Plaintiff seeks an order directing Defendants to remove him from the No Fly List and to provide proper procedures for him to challenge his placement on the No Fly List. That essential relief has been provided by DHS and, as recommended, it is not reasonably likely that Plaintiff will be added again to the No Fly List based on existing circumstances. Therefore, injunctive relief is inappropriate. *See Gagliardi*, 889 F.3d at 734 ("[A]n injunction cannot be fashioned when the prospect of future injury is only speculative; again, there must be a 'likelihood of substantial and immediate irreparable injury.'") (quoting *Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)).

Plaintiff also seeks a declaration that Defendants' policies with respect to nominating individuals to the No Fly List are unconstitutional and violate the APA. However, "before a federal court may issue relief under the [Declaratory Judgment Act], there still must be a case or controversy that is live, is definite and concrete, and is susceptible to specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Gagliardi*, 889 F.3d at 35 (citation and quotation marks omitted). As such, the undersigned recommends that the relief sought by Plaintiff with respect to the No Fly List—injunctive or declaratory—no longer "remains viable, and without any tenable claim to redress, the case [with respect to the No Fly List] has become moot." *Id.* at 733.

## B. Claims Based on the TSDB

The undersigned recommends that Plaintiff's claims based on his placement on the TSDB need to be re-pled for several reasons. First, Plaintiff's claims based on the No Fly List and the TSDB are so intertwined that is difficult to evaluate Plaintiff's claims based on the TSDB now that he has been removed from the No Fly List. For example, it is unclear whether Plaintiff even remains on the TSDB.

In addition, it is unclear what injury, if any, Plaintiff is suffering if he is still on the TSDB. It appears that Plaintiff's only potential remaining injury resulting from his placement on the TSDB is the suspension of his TWIC.[5] However, it is not clear whether Plaintiff's TWIC is actually still suspended. Indeed, TSA informed Plaintiff that his TWIC was "suspended until this matter is resolved," which indicates an investigation was ongoing. Thus, it is not clear whether Plaintiff's TWIC has been reinstated now that Plaintiff has been removed from the No Fly List.

---

[5] Notably, courts have held that heightened screening allegations can support standing to challenge inclusion on the TSDB. *See Ibrahim v. Dep't of Homeland Sec.*, 669 F.3d 983, 993 (9th Cir. 2012); *Elhady v. Piehota*, --- F. Supp. 3d ----, 2017 WL 8784456, *4 (E.D. Va. Sept. 5, 2017). In the Response, Plaintiff states that "[i]nclusion in the TSDB itself inhibits travel – subjecting listees to enhanced screenings throughout the United States and in foreign countries," and notes that he "reasonably expects that continued inclusion on the TSDB will result in future difficulties." (Doc. 26 at 10 n.5 & 15.) However, Plaintiff does not allege in the Complaint (or the Response) that he has actually been subjected to enhanced security measures or that he has been prevented or delayed from traveling since he was removed from the No Fly List.

Accordingly, the undersigned recommends that Plaintiff be directed to amend his Complaint so that it reflects his present circumstances.[6] More than a year has passed since Plaintiff was informed of the TWIC suspension on May 24, 2017. Since then, Plaintiff has been removed from the No Fly List and it is not clear from the outdated Complaint whether Plaintiff remains on any other federal terrorist watchlist or whether he is being injured by his presence on any such list.

**V.    Conclusion**

Accordingly, it is respectfully **RECOMMENDED** that:

1.    The Motion (**Doc. 23**) be **GRANTED in part** and **DENIED in part** as stated herein.

2.    The Complaint (**Doc. 1**) be **DISMISSED without prejudice**.

3.    Plaintiff be given twenty days from the Court's order on this Report and Recommendation to file an amended complaint in accordance herewith.

**DONE AND ENTERED** at Jacksonville, Florida, on July 10, 2018.

JOEL B. TOOMEY
United States Magistrate Judge

---

[6] Because the status of Plaintiff's situation is so unclear, the Court need not address any of the substantive issues raised in Defendants' Motion at this time, such as whether Plaintiff must first exhaust his administrative remedies regarding the TWIC suspension with TSA or whether he has adequately plead a constitutional violation.

13

Copies to:

The Honorable Timothy J. Corrigan
United States District Judge

Counsel of Record